# EXHIBIT B

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

Edward O. Sassower
To Call Writer Directly:
212 446-4733
esassower@kirkland.com

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900

Dir. Fax: 212 446-4900

March 20, 2007

**Via Hand Delivery**

Honorable Burton R. Lifland
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004-1408

RE:    *Calpine Corporation, et al., Case No. 05-60200*

Dear Judge Lifland:

On March 12, 2007, this Court entered an Order (I) Granting Debtors' Limited Objection to Claim Numbers 2664, 3275, 3393 Through 3421 (Inclusive), 3546 through 3554 (inclusive), 3586 through 3588 (inclusive), 3731, 4073, 5653 through 5730 (inclusive), 5791, and 5792; (II) Determining the Value of the CalGen Secured Debt Pursuant to Rule 3012 of the Federal Rules of Bankruptcy Procedure, and (III) Authorizing Repayment of CalGen Secured Debt (Docket No. 3970) (the "CalGen Secured Debt Repayment Order").

Inadvertently, a comment to the CalGen Secured Debt Repayment Order that had been proposed by the Official Committee of Unsecured Creditors (and accepted by the Debtors) was not included in the version of the CalGen Secured Debt Repayment Order that was submitted to the Court. To rectify this oversight, the Debtors attach for the Court's consideration clean (at Exhibit A) and blacklined (at Exhibit B) versions of an amended CalGen Secured Debt Repayment Order (the "Amended CalGen Secured Debt Repayment Order").

The Debtors note that the Amended CalGen Secured Debt Repayment Order has been approved by counsel for the Official Committee of Unsecured Creditors, the Official Committee of Equity Security Holders, the Unofficial Committee of Second Lien Debtholders of Calpine, the proposed Replacement DIP Facility Administrative Agents, and the CalGen Secured Debt Second Lien Noteholders. Counsel for the CalGen Secured Debt First Lien Administrative Agent and Indenture Trustee, as well as the CalGen Secured Debt Third Lien Indenture Trustee,

Chicago    Hong Kong    London    Los Angeles    Munich    San Francisco    Washington, D.C.

Honorable Burton R. Lifland
March 20, 2007
Page 2

have informed the Debtors that they object to the Amended CalGen Secured Debt Repayment
Order (as they also opposed the previous CalGen Secured Debt Repayment Order).  Nonetheless,
the Debtors believe the proposed amendment is appropriate and therefore respectfully request the
Court enter the Amended CalGen Secured Debt Repayment Order attached as Exhibit A.  The
Debtors are, of course, are available by telephone if the Court wishes to discuss this matter
further.

Respectfully,

Edward O. Sassower

EOS/ikm

Enclosures

CC:    Michael Stamer, Philip Dublin and Fred Hodara, counsel for the Official Committee of
        Unsecured Creditors
        Gary Kaplan, counsel for the Official Committee of Equity Security Holders
        Andrew Rosenberg and Elizabeth McColm, counsel for the Unofficial Committee of
        Second Lien Debtholders of Calpine
        David Mack and Peter Pantaleo, counsel for the agents for the lenders under the
        Replacement DIP Facility
        Richard Mason, Joshua Feltman and Emil Kleinhaus, counsel for The Bank of Nova
        Scotia, as Administrative Agent
        Richard Pedone, Amanda Darwin and Victor Milione, counsel for Wilmington Trust
        FSB, as Indenture Trustee, and Wilmington Trust Company, as Collateral Agent and
        Administrative Agent
        Mark Somerstein, counsel for HSBC Bank USA, as Indenture Trustee
        George Davis and Chris Marcus, counsel for Manufacturers & Traders Trust Company,
        as Indenture Trustee

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) |
|  | ) |
|  | )   Chapter 11 |
| Calpine Corporation, et al., | ) |
|  | )   Case No. 05-60200 (BRL) |
| Debtors. | )   Jointly Administered |
|  | ) |

**AMENDED ORDER (I) GRANTING DEBTORS LIMITED OBJECTION TO CLAIM**
**NUMBERS 2664, 3275, 3393 THROUGH 3421 (INCLUSIVE), 3546 THROUGH 3554**
**(INCLUSIVE), 3586 THROUGH 3588 (INCLUSIVE), 3731, 4073, 5653 THROUGH 5730**
**(INCLUSIVE), 5791, AND 5792; (II) DETERMINING THE VALUE OF THE CALGEN**
**SECURED DEBT PURSUANT TO RULE 3012 OF THE FEDERAL RULES OF**
**BANKRUPTCY PROCEDURE; AND (III) AUTHORIZING REPAYMENT OF CALGEN**
**SECURED DEBT**

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") seeking entry of an Order (a) granting the Debtors' limited objection to the CalGen Lenders' Claims, (b) determining the value of the CalGen Lenders' Claims pursuant to Rule 3012 of the Federal Rules of Bankruptcy Procedures, and (c) authorizing the Debtors to repay the CalGen Secured Debt (Docket No. 3481);[1] it appearing that the relief requested is in the best interest of the Debtors' estates, their creditors and other parties in interest; it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); it appearing that venue of this proceeding and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; notice of this Motion and the opportunity for a hearing on this Motion were appropriate under the particular circumstances and that no other or further

---

[1]   Capitalized terms not defined herein shall have the meaning provided in the Motion.

notice need be given; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED

1.    The Motion is granted to the extent set forth in the Memorandum Decision and Order Granting, In Part, Debtors' Motion for an Order (I) Authorizing Debtors to Obtain Replacement Postpetition Financing to (A) Refinance Existing Postpetition Financing and (B) Repay Prepetition Debt; (II) Allowing Debtors' Limited Objection to Claims; and (III) Determining Value of Secured Claims, entered March 5, 2007 (Docket No. 3875) (the "Memorandum Decision").

2.    Claim numbers 3275, 3393 through 3421 (inclusive), 3546 through 3554 (inclusive), 3586 through 3588 (inclusive), 3731, 4073, 5653 through 5730 (inclusive), 5791, and 5792 are hereby disallowed to the extent that such claims request amounts beyond the Repayment Amounts (as defined below).

3.    Pursuant to Rule 3012 of the Federal Rules of Bankruptcy Procedures, the value of the CalGen Lenders' Claims is hereby determined as the amount of outstanding principal, plus unpaid interest under the CalGen Secured Debt through the date of repayments, as calculated by the Debtors (the "Repayment Amounts"). The Debtors are authorized to repay immediately all of the Repayment Amounts.

4.    For the purposes of this Order, the Repayment Amounts will include unpaid interest calculated at the non-default contract rate under the CalGen Indentures. As provided in the Memorandum Decision, the Court will determine at a later date whether the CalGen Lenders are entitled to interest through the date of payment of the Repayment Amounts calculated at the default rate.

2

5.      Pursuant to the Memorandum Decision, the CalGen Lenders shall have the following unsecured claims to the extent the Debtors repay the respective Repayment Amounts prior to April 1, 2007: (A) the holders of the CalGen First Lien Notes shall receive an amount equal to 2.5% of the First Lien Notes principal so repaid; (B) the holders of the CalGen Second Lien Notes shall receive an amount equal to 3.5% of the Second Lien Notes principal so repaid; and (C) the holders of the CalGen Third Lien Notes shall receive an amount equal to 3.5% of the Third Lien Notes principal so repaid.   These unsecured claims will receive the treatment provided for in an appropriate plan of reorganization and shall not be included in the Repayment Amounts.

6.      Upon payment of the Repayment Amounts, claim numbers 3275, 3393 through 3421 (inclusive), 3546 through 3554 (inclusive), 3586 through 3588 (inclusive), 3731, 4073, 5653 through 5730 (inclusive), 5791, and 5792 shall be expunged and disallowed; provided, however, that the CalGen Lenders may continue to assert claims for the difference between interest calculated at the default rate and interest paid at the non-default rate through the date of payment of the Repayment Amounts, pending the Court's ruling on this issue.

7.      In settlement of the objection to the Motion filed by The Bank of Nova Scotia as Administrative Agent ("BNS") under the Amended and Restated Credit Agreement dated as of March 23, 2004 (the "LC Credit Agreement") among BNS, Calpine Generating Company, LLC ("CalGen"), certain guarantors, and certain lenders (the "LC Lenders"), the Debtors shall pay to BNS, in addition to its share of the Repayment Amounts and at the same time as the Repayment Amounts are paid, fifty percent (50%) of the incremental interest that has accrued through the repayment date at the Default Rate set forth in the LC Credit Agreement.   Along with the aggregate principal amounts drawn under letters of credit during the pendency of these cases (the

3

"Reimbursement Obligations"), which shall be included in the Repayment Amounts, the additional interest payable to BNS hereunder (including interest on the Reimbursement Obligations, interest on overdue interest, and interest on late-paid fees, all at the Default Rate) shall constitute an allowed prepetition secured claim against CalGen (such that the value of the claims filed by BNS shall not be limited to its share of the Repayment Amounts, notwithstanding any other provision of this order). In the event that the Debtors, at any time in the future (whether before or after this Court's adjudication of the Motion), agree to pay more than 50% of the post-petition default interest sought by any CalGen Lender, Calpine Second Lien Holder (as defined in the Motion), or agent, trustee or other representative of any CalGen Lender or Calpine Second Lien Holder, the Debtors shall supplement the amount paid to BNS (and the corresponding allowed claim) such that the percent of disputed interest paid to BNS, for the benefit of the LC Lenders, is equal to the percent of default interest paid to such lender or representative. BNS, on behalf of the LC Lenders, reserves the right to seek to collect interest owing under the LC Credit Agreement but not payable under this order from other prepetition lenders to CalGen pursuant to the Collateral Trust and Intercreditor Agreement dated as of March 23, 2004. If the letters of credit outstanding under the LC Credit Agreement (the "Outstanding LCs") are not returned or terminated undrawn at or prior to the closing of the Replacement DIP Facility (as defined in the Motion), then the Debtors will cause one or more letters of credit (the "Back-to-Back LCs") to be issued under the Replacement DIP Facility in favor of BNS or its designated affiliate as issuer of the Outstanding LCs. The aggregate face amount of the Back-to-Back LCs will be 102% of the face amount of the Outstanding LCs and will otherwise be in form and substance reasonably satisfactory to The Bank of Nova Scotia. The Debtors will continue to pay all fees and expenses of The Bank of Nova Scotia and the LC

4

Lenders in accordance with the LC Credit Agreement until such time as all obligations to BNS and the LC Lenders are satisfied and the Outstanding LCs are returned and terminated.

8.    Except as provided for in paragraph 7, the Debtors are authorized to discontinue all payments to the CalGen Lenders' professionals under the Cash Collateral Order as of the date the Repayment Amounts are paid; provided, however, that any reasonable professionals' fees incurred with respect to the litigation of default interest (before the Bankruptcy Court only) will be paid pursuant to the Cash Collateral Order.

9.    Upon entry of this Order, the Debtors and the CalGen Lenders (including all trustees, depositary agents, or any other administrators of the CalGen Secured Debt) shall be authorized to take all appropriate steps or measures to cause or secure the distribution of the Repayment Amounts pursuant to the terms of this Order to the appropriate parties on a ratable basis. For the purposes of distribution of the Repayment Amounts, the record date shall be the date that the Debtors transfer the Repayment Amounts. Any delays caused by, for instance, having to obtain subsequent orders to clarify any distribution mechanics, or any other issues that may be arise upon the Debtors transfer of the Repayment Amounts, shall not affect the record date, which shall remain the date the Debtors transfer the Repayment Amounts.

10.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

11.    The terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

12.    The requirement set forth in Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that any motion or other request for relief be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Application.

13.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: March __, 2007

_____
                         Honorable Burton R. Lifland
                         United States Bankruptcy Judge

6

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————— )
                        )
In re:                        )
                        )   Chapter 11
Calpine Corporation, et al.,    )
                        )   Case No. 05-60200 (BRL)
                Debtors.   )   Jointly Administered
                        )
———————————————————— )

<u>AMENDED</u> ORDER (I) GRANTING DEBTORS LIMITED OBJECTION TO CLAIM
NUMBERS 2664, 3275, 3393 THROUGH 3421 (INCLUSIVE), 3546 THROUGH 3554
(INCLUSIVE), 3586 THROUGH 3588 (INCLUSIVE), 3731, 4073, 5653 THROUGH 5730
(INCLUSIVE), 5791, AND 5792; (II) DETERMINING THE VALUE OF THE CALGEN
SECURED DEBT PURSUANT TO RULE 3012 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE; AND (III) AUTHORIZING REPAYMENT OF CALGEN
SECURED DEBT

Upon the motion (the "<u>Motion</u>") of the above-captioned debtors and debtors in

possession (collectively, the "<u>Debtors</u>") seeking entry of an Order (a) granting the Debtors'

limited objection to the CalGen Lenders' Claims, (b) determining the value of the CalGen

Lenders' Claims pursuant to Rule 3012 of the Federal Rules of Bankruptcy Procedures, and (c)

authorizing the Debtors to repay the CalGen Secured Debt (Docket No. 3481);[1] it appearing that

the relief requested is in the best interest of the Debtors' estates, their creditors and other parties

in interest; it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§

157 and 1334; it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. §

157(b)(2); it appearing that venue of this proceeding and this Motion in this District is proper

pursuant to 28 U.S.C. §§ 1408 and 1409; notice of this Motion and the opportunity for a hearing

on this Motion were appropriate under the particular circumstances and that no other or further

---

[1]   Capitalized terms not defined herein shall have the meaning provided in the Motion.

notice need be given; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED

1.    The Motion is granted to the extent set forth in the Memorandum Decision and Order Granting, In Part, Debtors' Motion for an Order (I) Authorizing Debtors to Obtain Replacement Postpetition Financing to (A) Refinance Existing Postpetition Financing and (B) Repay Prepetition Debt; (II) Allowing Debtors' Limited Objection to Claims; and (III) Determining Value of Secured Claims, entered March 5, 2007 (Docket No. 3875) (the "Memorandum Decision").

2.    Claim numbers 3275, 3393 through 3421 (inclusive), 3546 through 3554 (inclusive), 3586 through 3588 (inclusive), 3731, 4073, 5653 through 5730 (inclusive), 5791, and 5792 are hereby disallowed to the extent that such claims request amounts beyond the Repayment Amounts (as defined below).

3.    Pursuant to Rule 3012 of the Federal Rules of Bankruptcy Procedures, the value of the CalGen Lenders' Claims is hereby determined as the amount of outstanding principal, plus unpaid interest under the CalGen Secured Debt through the date of repayments, as calculated by the Debtors (the "Repayment Amounts"). The Debtors are authorized to repay immediately all of the Repayment Amounts.

4.    For the purposes of this Order, the Repayment Amounts will include unpaid interest calculated at the non-default contract rate under the CalGen Indentures. As provided in the Memorandum Decision, the Court will determine at a later date whether the CalGen Lenders are entitled to interest through the date of payment of the Repayment Amounts calculated at the default rate.

5.     Pursuant to the Memorandum Decision, the CalGen Lenders shall have the following unsecured claims to the extent the Debtors repay the respective Repayment Amounts prior to April 1, 2007:  (A) the holders of the CalGen First Lien Notes shall receive an amount equal to 2.5% of the First Lien Notes principal so repaid; (B) the holders of the CalGen Second Lien Notes shall receive an amount equal to 3.5% of the Second Lien Notes principal so repaid; and (C) the holders of the CalGen Third Lien Notes shall receive an amount equal to 3.5% of the Third Lien Notes principal so repaid.  These unsecured claims will receive the ~~same~~ treatment ~~as CalGen's other general unsecured claims~~**provided for** in an appropriate plan of reorganization and shall not be included in the Repayment Amounts.

6.     Upon payment of the Repayment Amounts, claim numbers 3275, 3393 through 3421 (inclusive), 3546 through 3554 (inclusive), 3586 through 3588 (inclusive), 3731, 4073, 5653 through 5730 (inclusive), 5791, and 5792 shall be expunged and disallowed; provided, however, that the CalGen Lenders may continue to assert claims for the difference between interest calculated at the default rate and interest paid at the non-default rate through the date of payment of the Repayment Amounts, pending the Court's ruling on this issue.

7.     In settlement of the objection to the Motion filed by The Bank of Nova Scotia as Administrative Agent ("BNS") under the Amended and Restated Credit Agreement dated as of March 23, 2004 (the "LC Credit Agreement") among BNS, Calpine Generating Company, LLC ("CalGen"), certain guarantors, and certain lenders (the "LC Lenders"), the Debtors shall pay to BNS, in addition to its share of the Repayment Amounts and at the same time as the Repayment Amounts are paid, fifty percent (50%) of the incremental interest that has accrued through the repayment date at the Default Rate set forth in the LC Credit Agreement.  Along with the aggregate principal amounts drawn under letters of credit during the pendency of these cases (the

3

"Reimbursement Obligations"), which shall be included in the Repayment Amounts, the additional interest payable to BNS hereunder (including interest on the Reimbursement Obligations, interest on overdue interest, and interest on late-paid fees, all at the Default Rate) shall constitute an allowed prepetition secured claim against CalGen (such that the value of the claims filed by BNS shall not be limited to its share of the Repayment Amounts, notwithstanding any other provision of this order). In the event that the Debtors, at any time in the future (whether before or after this Court's adjudication of the Motion), agree to pay more than 50% of the post-petition default interest sought by any CalGen Lender, Calpine Second Lien Holder (as defined in the Motion), or agent, trustee or other representative of any CalGen Lender or Calpine Second Lien Holder, the Debtors shall supplement the amount paid to BNS (and the corresponding allowed claim) such that the percent of disputed interest paid to BNS, for the benefit of the LC Lenders, is equal to the percent of default interest paid to such lender or representative. BNS, on behalf of the LC Lenders, reserves the right to seek to collect interest owing under the LC Credit Agreement but not payable under this order from other prepetition lenders to CalGen pursuant to the Collateral Trust and Intercreditor Agreement dated as of March 23, 2004. If the letters of credit outstanding under the LC Credit Agreement (the "Outstanding LCs") are not returned or terminated undrawn at or prior to the closing of the Replacement DIP Facility (as defined in the Motion), then the Debtors will cause one or more letters of credit (the "Back-to-Back LCs") to be issued under the Replacement DIP Facility in favor of BNS or its designated affiliate as issuer of the Outstanding LCs. The aggregate face amount of the Back-to-Back LCs will be 102% of the face amount of the Outstanding LCs and will otherwise be in form and substance reasonably satisfactory to The Bank of Nova Scotia. The Debtors will continue to pay all fees and expenses of The Bank of Nova Scotia and the LC

4

Lenders in accordance with the LC Credit Agreement until such time as all obligations to BNS and the LC Lenders are satisfied and the Outstanding LCs are returned and terminated.

8.      Except as provided for in paragraph 7, the Debtors are authorized to discontinue all payments to the CalGen Lenders' professionals under the Cash Collateral Order as of the date the Repayment Amounts are paid; provided, however, that any reasonable professionals' fees incurred with respect to the litigation of default interest (before the Bankruptcy Court only) will be paid pursuant to the Cash Collateral Order.

9.      Upon entry of this Order, the Debtors and the CalGen Lenders (including all trustees, depositary agents, or any other administrators of the CalGen Secured Debt) shall be authorized to take all appropriate steps or measures to cause or secure the distribution of the Repayment Amounts pursuant to the terms of this Order to the appropriate parties on a ratable basis.  For the purposes of distribution of the Repayment Amounts, the record date shall be the date that the Debtors transfer the Repayment Amounts.  Any delays caused by, for instance, having to obtain subsequent orders to clarify any distribution mechanics, or any other issues that may be arise upon the Debtors transfer of the Repayment Amounts, shall not affect the record date, which shall remain the date the Debtors transfer the Repayment Amounts.

10.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

11.      The terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

12.      The requirement set forth in Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that any motion or other request for relief be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Application.

13.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: March __, 2007

_____
                               Honorable Burton R. Lifland
                               United States Bankruptcy Judge

Document comparison done by Workshare DeltaView on Monday, March 19, 2007
12:20:39 PM

| Input: | |
|---|---|
| Document 1 | iManageDeskSite://KEDMS/LEGAL/11674494/1 |
| Document 2 | iManageDeskSite://KEDMS/LEGAL/11693255/1 |
| Rendering set | Basic K&E |

| Legend: | |
|---|---|
| **Insertion** | |
| ~~Deletion~~ | |
| *Moved from* | |
| *Moved to* | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Redline Summary: | | |
|---|---|---|
| No. | Change | Text |
| 1 | Change | "ORDER (I) GRANTING DEBTORS LIMITED" changed to "AMENDED ORDER (I) GRANTING DEBTORS LIMITED" |
| 2 | Change | "unsecured claims will receive the same treatment" changed to "unsecured claims will receive the treatment" |
| 3-4 | Change | "treatment as CalGen's...plan of reorganization" changed to "treatment provided for in...plan of reorganization" |

| Statistics: | | |
|---|---|---|
| | Count | |
| Insertions | | 2 |
| Deletions | | 2 |
| Moved from | | 0 |
| Moved to | | 0 |
| Style change | | 0 |
| Format changed | | 0 |

| Total changes | 4 |
|---|---|